## HAZELTINE CORPORATION v. SEARS ROEBUCK & CO., Inc.

District Court, S. D. New York.
Dec. 26, 1933.

Pennie, Davis, Marvin & Edmonds, of New York City (Willis H. Taylor, Jr., and Baldwin Guild, both of New York City, of counsel), for plaintiff.

Clyde A. Norton and Stephen H. Philbin, both of New York City, for defendant.

FRANK J. COLEMAN, District Judge.

The three patents in suit relate to radio receiving sets, and are alleged to have particular importance in connection with single dial tuning. The first, No. 1,648,808, covers the tuned circuits generally, and purports to show a method of so constructing them that the separate tuning dials for the various circuits would have substantially similar readings; it does not, however, mention the possibility of unicontrol for all the circuits. The other two patents, Nos. 1,755,114 and 1,755,115, cover an improvement in the tuning condensers which would make it possible to adjust their capacities, so that, if they were simultaneously operated on the single shaft of a unicontrol dial, they would properly tune their respective circuits.

1. The first patent has already been considered by this court in Hazeltine Corp. v. Radio Corp., 52 F.(2d) 504, where Judge Woolsey held that its principal idea did not involve invention over the prior art and that the claims which embodied it (Nos. 1, 2, 3, 14, 15, 17, 18, and 21) were invalid. The plaintiff concedes the correctness of that decision, but contends that claim 19, the only one here in suit, embodies a different idea. It was, at any rate, a minor and delayed consideration of the patentee because it was not included until two years after the filing of the applica-

tion and four years after the alleged invention.

Claim 19 reads as follows: "A radio receiver comprising a vacuum tube detector and a tuned radio-frequency amplifier including at least one vacuum tube, each vacuum tube being provided with an input circuit and an output circuit, means including a coil connected in the input circuit of the first vacuum tube in said amplifier for coupling said tube to an antenna system such that the tuning of the input circuit of said first vacuum tube is substantially unaffected by reasonable changes in the oscillation period of said antenna system, adjustably tuned means including a coil connected in the input circuit of each tube for coupling said tubes together, the electrical constants of all of the tuned circuits being substantially alike, undesirable capacity coupling between the input and output circuits of each tube of said amplifier whereby there is a tendency toward oscillations, and means for limiting said tendency so that detuning of any of said circuits for oscillation control is rendered unnecessary, whereby the adjustments for all of the tuned circuits are substantially the same at any given frequency setting within the range of the receiver."

The combination of means to accomplish the result that "the adjustments for all of the tuned circuits are substantially the same at any given frequency setting within the range of the receiver" included no single element which in itself was novel. It had been thoroughly understood that a single circuit could be tuned to a maximum of efficiency in the reception of a desired frequency by establishing a certain relation between the capacitance and the inductance of the circuit; that, where two circuits were coupled by a transformer, the capacitance of one circuit was to some extent reflected across the transformer so as to have effect in the other circuit; that the degree of the reflection varied with the closeness of the coupling; and that, if the transformer had a step-up turns ratio, the primary circuit had a correspondingly smaller power of reflecting its capacitance across the transformer, and the secondary circuit a correspondingly greater effect in tuning the combined circuit. Applying this to the antenna circuit of a receiving set, the world's knowledge of electrical principles was sufficient to cover the fact that the primary circuit could be tuned to some extent without any variable condenser in it, but solely through the reflected effect of a variable condenser in the secondary circuit; that, the closer the coupling, the greater the efficiency of the secondary's variable condens-

er in tuning the primary; and, finally, that a step-up turns ratio in the transformer would give the total capacity of the primary circuit less effect in the tuning of the combined circuits.

If any skilled workman had desired to construct a receiving set in which the various circuits, excluding the antenna, could be tuned to a certain radio frequency by equal adjustments of the variable condensers, and consequently with similar dial readings, he could have done so without the teaching of Hazeltine. See article of Scott-Taggartt, Defendant's Exhibit M. It is manifest he would have done what was usually done in the construction of receiving sets; namely, install similar condensers, transformers, etc., in the various circuits, with the result that the same adjustment of the variable condenser in each circuit would establish the necessary relation between inductance and capacitance in each to tune it to the desired frequency. There would, of course, have to be shielding or other means of preventing undesired coupling and regeneration between the circuits, but that was old in the art.

In regard to the antenna circuit, however, an additional problem is presented, because the capacity of the aerial has an effect in the tuning of the first stage which is not present in the later ones, and consequently tends to require a different adjustment of the variable condenser of the first stage in order to tune to the desired frequency. The greater the capacity of the aerial, the greater its disturbing effect in the tuning of the first stage. If the coupling of the antenna transformer is loose, there is less effect of the aerial capacity in the tuning of the first stage, but with less effective tuning of the primary, in the absence of a variable in it. On the other hand, if the coupling is close, greater allowance must be made for the capacity of the aerial in tuning the first stage, with consequently a greater divergence between the condenser adjustment for the first stage and those for the others—all of which was within the scope of the world's theoretical knowledge before the effective date of the first patent in suit.

The plaintiff contends that Hazeltine solved the problem of tuning all the radio frequency circuits (including the antenna) by the same degree of adjustment of all the variable condensers, with consequent similar dial readings, regardless of the amount of capacitance in the particular aerial, provided it approximated standard. In so far as the idea applies to the tube circuits, exclusive of the antenna it clearly does not involve invention

over the prior art. As to the antenna tuning, the specification is far from definite and explicit because, as already noted, it was manifestly an afterthought in the application for the patent.

Almost all of the specification relates to the so-called "conductance-ratio" claims which Judge Woolsey held to be invalid, and there are only a few scant statements of matters having particular reference to the claim now in suit. They provide for "a considerable step-up ratio" in the antenna transformer so as to have reflected from the antenna "a much smaller capacity and resistance in the secondary circuit"; "a fairly close coupling" in the antenna transformer so that the primary and secondary circuits would be "tuned as a unit"; and that all the tuned circuits have similar variable condensers, but that the antenna transformer be deprived of the natural capacitance existing in the other transformers by a difference in winding so as to compensate for the added capacitance of the antenna. If these suggestions were definite enough to constitute a valid disclosure, it was of a scheme in part to minimize the capacity effect of the antenna and in part to compensate for it by the winding of the antenna transformer, so that the adjustments of the variable condensers in all the circuits might be "substantially" equal for any desired frequency.

On this point Hazeltine contributed no new thought to the world's scientific knowledge, and no new, definite device which utilized that knowledge. Claim 19 is for a receiving set in which the adjustments of all the variable condensers would be "substantially" the same, notwithstanding "reasonable" changes in the oscillation period of the antenna; and it does not state whether the set is to have a separately tuned antenna or "tuning as a unit." When we scrutinize the specification to ascertain the means by which he attains this vague result, we find a few scraps of information which are too indefinite to constitute a patentable disclosure. Furthermore, in view of the Alexanderson patent, No. 1,173,079, which discloses similar circuits (including, I find, an antenna separately untuned), it seems to me that Hazeltine's patent would not have shown an invention over the prior art, even if his specification and claim had been sufficiently definite. It is true Alexanderson's antenna was "loosely" coupled, and thus was little affected by the tuning of the first circuit, whereas Hazeltine's is "fairly close," and thus permits "tuning as a unit"; but this difference in degree of coupling and

tuning cannot be the basis of invention. The claim is, therefore, invalid.

But, even if it were not, the defendant does not infringe. If the claim were held valid, it would have to be restricted to the disclosure which is materially different from defendant's set. The latter has no "fairly close coupling," but one which varies from zero to 50 per cent., depending, not only on the volume control, but also upon the tuning; the number of windings in its antenna primary coil is materially less than in its other primaries, instead of more, as indicated by Hazeltine; and, finally, it has no means of compensating for the capacitance of the antenna by a difference in the direction of windings of the transformer coils as provided by Hazeltine. Unless the plaintiff is entitled to a monopoly of all sets tuning their radio frequency circuits by equal condenser adjustments and having some tuning effect reflected into an otherwise untuned antenna, the defendant does not infringe; and to give the claim such a broad construction in the face of the prior art would be preposterous. The impression received from the plaintiff's argument is that, because Hazeltine made a valuable contribution to the radio art in his plate-circuit neutralization, there must be something important in his present claim; but a careful consideration of his fragmentary disclosure in the light of the prior art leads me to conclude that there is nothing substantial in it, and apparently Hazeltine himself shared that view, because he delayed four years from the alleged invention and two years from the filing of the application before claiming it.

2. Patent No. 1,755,115 relates to an adjustable condenser per se, and patent No. 1,755,114 covers it in combination with a tuned circuit. The one patent is a division of the other, and it is unnecessary to consider them separately. The basic idea is the common rotatably interleaving condenser with two means of making permanent adjustments, one for adding permanently to the circuit a definite amount of capacitance, regardless of what might be added by the rotation of the interleaving plates, and the other for permanently changing the rate at which the capacitance is increased or decreased by the rotation of the plates. Such adjustments are important in single dial receiving sets because the tuning condensers for the different circuits are ganged together so that their plates must be rotated equally. For each desired frequency each circuit needs a definite amount of capacitance depending upon the amount of

inductance in the circuit; and, if the rotation of the ganged condensers does not supply the required amount to each circuit, the tuning will not be perfect. It is apparent that in the commercially made condensers inaccuracies in manufacture will prevent them from having exactly the same amount of capacitance for the same degree of rotation, and to correct this Hazeltine provided a "rate of change" adjustment which would make any given rotation of the unicontrol shaft increase or decrease the capacitance of each condenser by the same amount. It is also apparent that, due to minute differences in the circuits apart from the condensers, they would ordinarily not be tuned exactly to the same frequency by the addition of the same amount of capacitance on the rotation of the ganged control; so Hazeltine provided his minimum adjustment in the condensers, which would serve to put all the circuits on a parity, so that the addition of the same amount of capacitance in each on the rotation of the ganged control would tune them all to the same frequency.

His minimum adjustment means is merely an additional plate conductively connected with the rotors, but not movable on the rotation of the control shaft. It may be moved separately into such a position in relation to the stator plates that it supplies to its circuit the amount of capacitance needed to put that circuit on a parity with the others, and it will remain permanently in that position.

His "rate of change" adjustment means is the movability of one of the stator plates axially along the shaft so that it may be placed closer to or further away from its rotor and left permanently in that position. The closer the plates, the greater their capacitance, and also the greater the increase or decrease in the capacity of the condenser for any given rotation of the shaft. So that, by positioning the adjustable stator plate closer to its rotor, the rate of change in capacitance on the rotation of the shaft is increased, and vice versa.

The defendant's condensers have two adjustable means which serve the same purposes as Hazeltine's, but they are operated differently. Defendant's minimum adjustment means is an ordinary trimmer condenser connected in parallel with the rotatable one, and it serves to add permanently to the circuit sufficient capacity to equalize it with the other circuits; but it is separate from the tuning condenser, and is not formed of an additional rotatable plate coacting with one of the stators. Defendant's "rate of change" adjustment is the bending of one of the rotor plates so that parts of it may be closer to, or further

away from, the corresponding stator; and, to facilitate the bending, the plate is sometimes slotted so that segments of it may be more easily bent without bending the entire plate. In the defendant's adjustment, the rotor plate is not moved along the shaft as Hazeltine's stator is, and the bending of separate segments permits the increase or decrease of the "rate of change" at certain parts of the rotation without affecting the whole, which makes possible a more exact alignment of the tuned circuits at different frequencies than does Hazeltine's device.

The principles underlying these adjustments were thoroughly understood by the radio world without any teaching of Hazeltine. Unicontrol by means of ganged tuning condensers had been disclosed (Scott-Taggartt, Exhibit M; Hogan patent, No. 1,014,002 and 1,363,319; Lowenstein, No. 1,618,017; Proctor, No. 1,555,254), and it was recognized that in similar circuits any given rotation of the ganged condenser shaft would have to add the same amount of capacitance to each circuit in order to have satisfactory tuning of the set. Trimmer condensers for equalizing the circuits had been known (Slaughter, No. 1,290,382, and Chamberlain, No. 1,573,374). "Rate of change" adjustments also had been disclosed and in use (Proctor, No. 1,555,254; Lemmon, No. 1,702,833). Indeed, I am convinced that the trade had for many years used the expedient employed by the defendant of bending the plates in order to affect the rate of change; this must have been a method obvious to any one skilled in the art. The only thing contributed by Hazeltine in this connection was the particular form of condenser which he discloses for the purpose of accomplishing these two adjustments, and he is not entitled to a patent broader than that. The defendant does not use his form as to either of them, and there was therefore no infringement.

3. The history of the three patents in the radio art, including the question of their commercial success and of defendant's use of licenses under them, does not, in my opinion, militate against the above conclusion. Hazeltine's plate-circuit neutralization patent did have considerable commercial success, and the defendant's wholly owned subsidiary corporation had a license and manufactured under it. The three patents in suit were associated with the neutralization patent and other Hazeltine patents, with the result that defendant sold sets marked as licensed under the patents in suit. The alleged infringing set was not so marked nor was it made by a

licensee; furthermore, I am not convinced that the defendant or its subsidiary was much concerned about the patents in suit apart from the other Hazeltine patents, nor that they had any separate commercial success.

Decree is, accordingly, directed for defendant to be settled on notice.